Haynes, J.,
(orally).
The case of G. C. Bell plaintiff in error, v. Eva J. Ernsberger, defendant in error, is a petition in error brought for *500 the purpose of reversing the judgment of the court of common pleas rendered upon a petition in error pending in that court to reverse the judgment upon the justice’s docket of C. W. Patchen, Justice of the Peace in Hartland township, this county. The original action was brought by Eva J. Ernsberger to recover a penalty provided in section 4715a of the Revised Statutes of Ohio, which was passed to supplement section 4175, as appears in the 89th Ohio Laws, page 41, and which reads as follows :
“It shall be unlawful for any supervisor to excavate or make any open ditch on and along a public highway in front of any dwelling house or yard surrounding the same, or entrance thereof, or in front of the entrance or approach to any barn on that side of the road on which the buildings are situated, unless he forthwith puts in sufficient under-drain and fills up the excavation to the original level, except when authorized to -make such open ditch at said points, by the owner of such buildings or trustees of the township. And any-road supervisor violating this section shall forfeit and pay to the owner of any such buildings twenty-five dollars, to be recovered in a civil action before any such justice of the peace.”
Suit having been duly commenced at a certain time, a demand was made for a jury, and a jury was selected and called. A trial was had which resulted in a judgment for the defendant below, the supervisor.
Thereupon a bill of exceptions was duly taken by the plaintiff below. There are a great many points made in this case, but I shall not undertake to go very much at length into a discussion of them, as we have not time to do it. I don’t think the matter is sufficiently important to justify us in taking up the time which ought to be given for other matters.
However, it is said there was no reason given by the court of common pleas for its reversal of the justice of the peace’s judgment, except that it is stated that there was “an abundance *501 of errors.” I will therefore go over some of them, and discuss them.
The first thing that was done was this: After the jury was sworn, before any evidence was adduced, the defendant moved the court to send the jury in a body to view the premises described in the bill of particulars, to which the plaintiff objected, stating at the time that the conditions and surroundings of the place excavated or dug out had been materially changed since the 20th of June, 1892, and that any view that the jury might take at this time, that is, at the time of the trial, would not assist them any in giving a verdict; but would mislead them. The justice sustained the motion, to which the plaintiff excepted at the time. It appears that he directed the constable, to take the jury out to view the premises; but whether they did go or not, it is not reported, but it is hinted at from time to time, and we will assume that they did go in pursuance of the order of the court. We suppose that under the proper circumstances, it would be proper for a justice to send a jury out.
Section 6705 of the Revised Statutes governing proceedings before justices of the peace, provides:
“The provisions of title one, part third, of the Revised Statutes, which are in their nature applicable to the proceedings before justices, and in respect of which no special provision is made in this title, are applicable to the proceedings before justices of the peace.”
We find nothing in the justice’s act to reverse this. We do not see why this may not, under proper circumstances, be applicable to proceedings before justices of the peace, but we are inclined to the'opinion that, under the circumstances, the justice ought not to have granted this application, because it appears by statements made, which are uncontradicted, that these premises were not in the condition that they were at the time the work was done; in fact, the record shows that the place had been filled up by the superviser himself, and the view that *502 they would obtain would be perhaps general, and might be misleading in regard to matters in issue.
It is said here by counsel that under this act the jury go out simply to see the premises for the purpose of applying the evidence. Well, counsel ought not to be so sure about the matter. I know of no statute upon the books that gives the courts more trouble at the present time than this one. The question as to whether the facts that are ascertained and the matters that are seen by a jury, are to be deemed or held to be affirmative evidence, is one upon which courts differ and the authorities differ. There has been a great deal of ink expended upon it and the effect that is to be given to such a view when a bill of exceptions shows it to have been had. But without discussing that, or passing upon it in any way, we simply say that we think the jury ought not to have been sent out, unless the premises were shown to be, or at least, the premises were in fact, in substantially the same condition that they were at the time this alleged ditch was dug, or the excavation made.
The whole testimony is not set out, but from time to time evidence is adduced. The first exception is as to this question : “ At the time this was done, (meaning the digging and excavating or plowing and scraping by defendant), you were not living there, so that if any one was inconvenienced, it was not yourself, but Mr. Lewis, your hired man ? ” This was objected to by plaintiff Objection overruled and admitted. The witness stated, “ my husband was there, and my hired man and his family and I considered it an inconvenience.”
I don't see what that had to do with the issues in the case. The fact is, that the issue was simply this under the statute: Whether the supervisor had excavated or made a ditch along a public highway in front of any dwelling-house, or that house or that yard or entrance, and whether, having done so, he has filled it up in the manner pointed out by the statute ; or, if he had omit *503 ted to so fill it, whether he had done so by the consent of the trustees. It was not claimed that he had done it by consent of the trustees, and that may as well be left out, so that the two facts to be treated are whether he had caused a ditch to be dug at that point. Certainly, if the jury found that he had done so, and that he had not covered it up in the manner pointed out by the statute, then the cause of action accrued to- the plaintiff; that is to say, the supervisor forfeited the $25, which the statute authorizes the then owner of the property to recover.
Now, that was all there was to be considered before that jnry.
The second exception was to the question : “If there was any inconvenience from this ditch as you call it, it was to Mr. Lewis'?” And that was allowed. The next question is, “Did your husband ever ask your permission to bring this suit'? ”
The property was in the name of the wife, it seems. That question was objected to, and the witness answered: “As I have before stated, my husband was my agent to bring this suit, and I thought as Mr. Sell had done wrong, it ought to be righted. I thought that he had done a. mean trick.”
Q. “Didn’t your husband say, “I am going to sue Mr. Sell ?’ ” This was objected to, overruled and plaintiff excepted. A. “I don’t know as he did.”
Q. “Did you make the deposit for costs in this case, or do yon know who made it ?” This was also objected to, overruled and exception taken. The witness answered “I suppose my husband made them as my agent.”
“ Did you hire the lawyers in this case?” The witness answered, “ I think my husband did, as my agent.”
It is sufficient to say that this is entirely immaterial, and the question ought not to have been allowed.
Then the next question is, “ Did, you sell this property, (meaning the property in question) before this suit was commenced?” And she answers, “ I sold it to Mr. F. D. Tucker *504 before this suit was commenced, but not until after the 20th day of June, 1892.”
Q. “ When did you sell it? A. E don’t remember just when I sold it. I did not place it in my mind, but it was a good while after this plowing and scraping was done.”
Q. “Did you own the land when you brought this suit? A. I think it was sold. We sold it Mr. Tucker after this plowing and scraping was done, as I have already said.”
The point that the counsel was aiming at .was this, that suit must be brought by the owner of the property at the time the suit was brought. As to that, we hold that the cause of action arose at the time the acts were committed, and the penalty was vested in her — in this plaintiff, and was hers; it was not transferred to anybody.
We come now to the 10th exception, and I may as well say that these questions were all objected to.
Q. “ Did you hire the lawyers in this suit ? (The question was addressed to the husband.) A. I was my wife’s agent to bring this suit, and hired them.”
Q. “ Did you deposit the security for costs in this case ? A. I, for my wife, put up some money.”
Q. “ Did you strike the jury in this case? A. Yes.”
Q. “ Did your wife own that land since March or April of 1893? A. She has not owned it since March or April, of 1893.”
For the same reason that I have already stated, this was improper.
Q,. “ Is it not a fact that you have been stirring up trouble in your neighborhood for twenty years, or more ? A. No, sir; it is not a fact.”
Q. “ Did you have some trouble with Mr. James Park? A. I did have some trouble with him.”
Q. “Have you not had trouble with Mr. Chapin? A. I once had to sue Mr. Chapin.”
Q. “ Did you not have trouble with Mr. S. A. Burras ? A. E don’t know as I did.”
*505 Q. “Did you have trouble with Mr. Morgan ? A. Morgan and I may have had some difficulty.”
Q. “ Did you have trouble with a Mr. Wiatt ? A. I don’t know as I did.”
Q. “ Did you have trouble with Mr. Denslow? A. I did not.”
Q. “ Did you have trouble with Mr. Lewis? A. I did not have trouble with Mr. Lewis.”
Q. “ Did you have trouble with the Presbyterian church, at Olena ? A. I applied to the Presbyterian church for a letter, and it was refused me, and I went to the Methodist church without one.”
We know of no light that these questions and answers could throw upon the matter at issue before the court and jury. It certainly does not show whether there was or was not any ditch excavated or dug.
We now come to the 23rd exception — the next in order:
Q. “ Did you plow or scrape out the dirt intentionally or wilfully or maliciously ? (This question is to the supervisor himself.) A. No, I did not; I done it for the good of the road.”
Q. “ What was the condition of the road and surroundings and circumstances of the same in front of the Ernberger property on June 20th, 1892, and shortly prior to that time? A. The road was hollowed out so that the water ran down from Ernsberger’s yard and lane onto the highway. When the milk-stand stood ,there was a sort of hummock which had to be removed.”
Q. “ What effect did it (the water) have upon the road ? A. It washed it out. I plowed and scraped it out, or had my son Tom and Grant Olney do it, into the road. I leveled it up nicely like an onion bed. I intended to fill and level the road up right away, but I was taken sick immediately after it was done, and came very near dying. So I had to wait a week or so before doing it.”
First, whether it was done maliciously or not. The reason *506 that that question was put by counsel was that the bill of particulars stated that it had been done wilfully and maliciously. That was not necessary in an action in recovering a penalty, and the whole matter should be treated as surplusage, and the question whether it was done maliciously should not have been brought into the case, we think.
It was a case where there could be no punitive damages, but simply to recover |25.00 penalty.
The question in regard to what was done at that point was proper to show whether there was a ditch dug there, and what excavation was made; but his object and purpose in doing it was not a material matter. As I have already stated, he had the right, if, in his judgment, he thought it was necessary to do it, to put a ditch by the side of the road; he had the right to excavate there. It was his duty to do it, and perhaps, in the preceding section of the statute, it would require him to do it. But that is not the gist of the statute ; that is not the purpose for which the change was made. The statute allows this excavation to be made, — these ditches to be dug for the water to be carried off from the roadside. What it requires to be done is, that there shall be a replacing or a covering of the ditch, either by putting in tile, or else by putting on a sufficient covering so that a party shall have the same access to his property that he had before. That is the whole force and effect of the amendment to the statute, and the object and purpose of it.
It was right to have that done, unless the township trustees in their judgment should order the work to be done without the refilling, or tiling or covering.
Some questions were asked as to the effect upon the road, etc., which are not, in our judgment, material. The question was whether he did in fact dig a ditch there at that point, and the next question is whether he had covered it.
I come now to a series of questions that were put to parties, and there are quite a number of them, but they are of the same import and effect. They are something like this: The *507 witness says: “ .1 saw the place in question where the roadside in front of the Ernsberger house had been plowed and scraped out. I saw it after it was done. I was acquainted with the surrounding ground there.” Here witness described the appearance of the róad and the ditch, and gave all the facts connected with it at the place where the plowing and scraping was done by Sell.
Andrews Bros., for plaintiff in error.
G. R. Craig and A. M. Beattie, for defendant in error.
The question was asked him whether there was any open ditch after the plowing and scraping had been done, which was objected to, and the objection overruled and exception taken.
We are clearly of the opinion that that class of testimony is.not admissible in the case. That is to say, the concluding part, of it. It was proper for the witness, if he saw the place at the time, or immediately after the work had been done, to state that he saw it at that point, and describe it to the jury, and then stop. We know of no rule of law, or any decision, that authorizes a witness, not being a professional or an expert, but in ordinary facts of this kind, to go forward and state that that which he saw was either a ditch, or was not a ditch, when that is the very question at issue. That is a question for the jury to decide. After he had stated the facts he had seen, and described the full particulars, the jury were to pass upon the question as to the result-.
If I am correct in my recollectiou, that covers all the leading points; at least all that are made in the case, and it follows from what I have said that the judgment of the court of common pleas revei'sing the judgment of the justice will be affirmed by this court.